1
2
3
4
5          UNITED STATES DISTRICT COURT
6          NORTHERN DISTRICT OF CALIFORNIA
7
8
9
CASTRO VALLEY UNION 76, INC.,
10
            Plaintiff,                    No. C 11-0299 PJH
11
      v.                                  **ORDER DENYING MOTION FOR
12                                        CLASS CERTIFICATION**
VAPOR SYSTEMS TECHNOLOGIES,
13  INC.,
14          Defendant.
    _____/
15

16        Plaintiff's motion for class certification came on for hearing before this court on

17  August 22, 2012.  Plaintiff appeared by its counsel Martin Fox, and defendant appeared by

18  its counsel Todd Sorrell and Robert Ray.  Having read the parties' papers and carefully

19  considered their arguments and the relevant legal authority, the court hereby DENIES the

20  motion.

21                          **BACKGROUND**

22        This is a case filed as a proposed class action, seeking damages for sales of

23  allegedly defective gas pump nozzles, along with declaratory and injunctive relief.  Plaintiff

24  Castro Valley Union 76, Inc. ("Castro Valley") filed the original complaint in the Superior

25  Court of California, County of Alameda, on December 16, 2010, and defendant Vapor

26  Systems Technologies, Inc. ("VST") removed the case to this court on January 20, 2011,

27  pursuant to 28  U.S.C. § 1332(d).

28        Castro Valley asserts claims based on the sale of the VST Enviro-Loc EVR Balance

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

Fuel Nozzles ("the Nozzles") to California gasoline dispensing facilities (primarily retail motor fuel and service stations, or "gas stations").  Castro Valley alleges that the Nozzles were defective, were defectively designed, and were unfit for their intended purpose, in that they were prone to the unintended spraying of motor fuel while in operation.

Castro Valley alleges that after 13 "spill" incidents at certain gas stations were reported to the State of California, the Nozzles were subjected to special enforcement procedures taken by the Office of the State Fire Marshal.  Castro Valley asserts that it was forced to upgrade its motor fuel dispensing equipment to an approved EVR-compliant system, by December 2009, and that the Nozzles were subject to special orders by the State of California to have the "hold-open" clips removed until replacement Nozzles could be secured and installed at additional cost to Castro Valley and the class it seeks to represent.

VST's position is that its Nozzles were and remain certified by the California Air Resources Board and the Office of the State Fire Marshal, and that the Nozzles have been used more than 1 billion times in the State.  VST concedes that the Office of the State Fire Marshall did mandate removal of the "hold-open" clips while the State investigated the reported gas spills, but contends that the State also certified another VST gas nozzle that has "hold-open" clips and a secondary release mechanism.  According to VST, the State is currently giving gas station owners the option of choosing between installing the new Nozzles or keeping the old Nozzles but without the "hold-open" clips.

In the complaint, Castro Valley alleges causes of action against VST for (1) false advertising under California Business & Professions Code § 17500, (2) unfair and fraudulent business practices under California Business & Professions Code § 17200, (3) negligent misrepresentation, (4) negligence, and (5) breach of express and implied warranty, based on a third-party-beneficiary theory.

Castro Valley now seeks an order certifying a plaintiff class.  In the alternative, Castro Valley seeks an order also certifying subclasses "as the [c]ourt may deem necessary," though it does not explain how any such subclasses might be defined.

**United States District Court**
For the Northern District of California

**DISCUSSION**

A.    Legal Standard

        "Before certifying a class, the trial court must conduct a 'rigorous analysis' to determine whether the party seeking certification has met the prerequisites of Rule 23." Mazza v. American Honda Motor Co., Inc., 666 F.3d 581, 588 (9th Cir. 2012) (citation and quotation omitted).  The party seeking class certification bears the burden of affirmatively demonstrating that the class meets the requirements of Federal Rule of Civil Procedure 23. Wal-Mart Stores, Inc. v. Dukes, __ U.S. __, 131 S.Ct. 2541, 2551 (2011).

        In order for a class action to be certified, plaintiffs must prove that they meet the requirements of Federal Rule of Civil Procedure 23(a) and (b).  Rule 23(a) requires that plaintiffs demonstrate numerosity, commonality, typicality and adequacy of representation. First, the class must be so numerous that joinder of all members individually is "impracticable."  See Fed. R. Civ. P. 23(a)(1).  Second, there must be questions of law or fact common to the class.  Fed. R. Civ. P. 23(a)(2).  Third, the claims or defenses of the class representative must be typical of the claims or defenses of the class.  Fed. R. Civ. P. 23(a)(3).  And fourth, the class representative(s) must be able to protect fairly and adequately the interests of all members of the class.  Fed. R. Civ. P. 23(a)(4).

        If all four prerequisites of Rule 23(a) are satisfied, the court must determine whether to certify the class under one of the three subsections of Rule 23(b), pursuant to which the named plaintiffs must establish either 1) that there is a risk of substantial prejudice from separate actions; or 2) that declaratory or injunctive relief benefitting the class as a whole would be appropriate; or 3) that common questions of law or fact common to the class predominate and that a class action is superior to other methods available for adjudicating the controversy at issue.  See Fed. R. Civ. P. 23(b).

        The "rigorous analysis" required to determine whether each of these prerequisites has been satisfied will frequently "entail some overlap with the merits of the plaintiff's underlying claim."  Dukes, 131 S.Ct. at 2551-52; see also Ellis v. Costco Wholesale Corp., 657 F.3d 970, 981 (9th Cir. 2011).

United States District Court

For the Northern District of California

B.      Plaintiff's Motion

Through this motion, Castro Valley seeks certification of a class pursuant to Rule 23(a) and, apparently, all subsections of Rule 23(b).[1]  The class Castro Valley seeks to have certified is a class of "all California motor fuel station owners who purchased and installed the Vapor Systems Technologies, Inc. ('VST') EVR Balance Nozzle since its inception in late 2007 through the present," and also, perhaps, some subclasses (which are not identified).

1.      Rule 23(a)

Castro Valley must first demonstrate that it has satisfied the requirements for class certification under Rule 23(a), which requires a showing as to numerosity, commonality, typicality, and adequacy.  Castro Valley argues that it has done so.

In response, VST asserts that because of page limitations, it cannot address all the Rule 23(a) factors.  VST devotes five lines of its opposition brief to Rule 23(a), and then simply refers the court to its discussion of Rule 23(b)(3) and its arguments regarding why common questions do not predominate.  However, in a separate section of its brief, VST contends that Castro Valley is not an adequate class representative, because it lacks standing to assert any of the claims alleged in the complaint.  The court construes this as a concession by VST that the Rule 23(a) numerosity, commonality, and typicality requirements are met, though not the adequacy requirement.

With regard to adequacy, a threshold issue to seeking class certification is a showing by the named plaintiff and proposed class representative that he has personally been injured and therefore has standing to assert the claims alleged in the complaint.  See

---

[1]  Castro Valley states in its notice of motion that it is seeking certification under both Rule 23(b)(2) and Rule 23(b)(3).  See Notice of Motion, at 1.  However, at the beginning of its discussion of the Rule 23(a) factors, it asserts that "the proposed class satisfies the prerequisites of Rule 23(a) (numerosity, commonality, typicality, and adequacy) and the requirements of Rule 23(b)(3) (predominance and superiority)."  See Motion at 9.  Finally, in its discussion of the Rule 23(b) factors, Castro Valley states, "[t]he proposed class meets all of the subsections of Section B" (apparently referring to Rule 23(b)), and briefly refers to Rule 23(b)(1) (A) and (B); to Rule 23(b)(3); and to Rule 23(c)(5) – but does not mention Rule 23(b)(2).  See Motion at 23-24.

United States District Court
For the Northern District of California

Lierboe v. State Farm Mut. Auto Ins. Co., 350 F.3d 1018, 1022 (9th Cir. 2003).  Here, VST argues that Castro Valley lacks standing generally because it is a suspended corporation; that it lacks standing to assert the UCL claims because there is no evidence that it read or relied on any alleged misrepresentation or false advertisement; that it lacks standing to assert the negligence and negligent misrepresentation causes of action because it cannot show that it relied on any alleged VST representation, and also because it cannot show that it suffered physical injury or physical loss of property as required under California's "no economic loss" rule; and that it lacks standing to assert the cause of action for breach of warranty because it never made a warranty claim, because its Nozzles did not fail during the warranty period (if ever), and because it is not in privity of contract with VST.

First, with regard to the question of Castro Valley's corporate status, Castro Valley has established that it has obtained a Certificate of Revivor and is back in good standing with the State of California.

Second, with regard to the UCL claims and the claims of negligence and negligent misrepresentation, it is not entirely clear whether or not Castro Valley relied on any particular representation.  Castro Valley's president Jagdish "Jack" Moorjani stated in his February 28, 2012 declaration filed in support of this motion that he had not relied on any written representations, and also testified in his May 3, 2012 deposition that he had never communicated with anyone at VST, and that he had not read anything communicated by VST (including advertising material) regarding the Nozzles prior to his purchase of the system.  However, Mr. Moorjani also testified, in response to a question regarding whether he believed the VST Nozzles were safe, that he was given "a brochure" that he read before buying the VST system, which "said that it was a good-quality nozzles and approved, you know, nozzles to be installed, and I didn't see any problem with the nozzles that I remember."  A copy of what may be that "brochure" is attached as Exhibit A to Mr. Moorjani's declaration, where he describes Exhibit A "a true and correct copy of some of the marketing materials that were (or are substantially similar to the ones that were)

United States District Court

For the Northern District of California

presented to me which influenced my decision to buy the VST Nozzles."[2]  Given the lack of clarity in the facts, the court finds that it is an open question whether Castro Valley has standing to assert the UCL and negligence claims on this basis.

With regard to VST's argument that Castro Valley lacks standing to assert the claims of negligence and negligent misrepresentation because it cannot show that it suffered physical injury or physical loss of property, as required under California's "no economic loss rule," Castro Valley's response is that this argument is not appropriate at this point in the litigation, and should be reserved for a later time.

California's "no economic loss rule" bars recovery in tort for economic damages caused by a defective product unless the plaintiff can also show that those losses are accompanied by some form of personal injury or damage to property other than the defective product itself.  Seely v. White Motor Co., 63 Cal. 2d 9, 16-19 (1965); KB Home v. Superior Court, 112 Cal. App. 4th 1076, 1079 (2003); Sacramento Reg'l Transit Dist. v. Grumman Flexible, 158 Cal. App. 3d 289, 293-94 (1984).  In California, economic losses are defined as "damages for inadequate value, costs of repair and replacement of the defective product or consequent loss of profits – without any claim of personal injury or damages to other property."  Frank M. Booth, Inc. v. Reynolds Metal Co., 754 F.Supp. 1441, 1449 n.4 (E.D. Cal. 1991).

VST contends that Castro Valley admitted in its responses to VST's requests for admission that it had not suffered any physical damage to its property, other than damage to the Nozzle system; and that Mr. Moorjani admitted at his deposition that the Nozzles worked without any problem; that no property was ever damaged by any failure of VST Nozzles at the Castro Valley station; and that any contract he had was with a third-party distributor, not with VST.  VST contends that because Castro Valley has not suffered any

---

[2]  Exhibit A is a 16-page VST brochure that includes the specifications for the VST Enviro-Loc EVR Balance Fuel Nozzles, plus a chart on one page that lists "Features, Benefits and Advantages" including mention of "safe and durable interlock design . . . [that] eliminates accidental fuel spillage . . . [and] reduces emissions caused by dripping, spitting, and liquid retention."

United States District Court
For the Northern District of California

1    physical injury or physical damage to property as a result of the VST Nozzles, the only

2    injuries it can allege are the out-of-pocket expenses it paid to purchase, install, and

3    ultimately replace the VST Nozzles, and the profits it claims it lost as a result of the State

4    Fire Marshal mandate.

5         Apart from any lost profits, it appears that Castro Valley is out of pocket in the

6    amount of $920.00, as Mr. Moorjani states in his declaration that Castro Valley purchased

7    the VST EVR system in February 2009 for a total cost of $22,652.48, which included eight

8    Nozzles at $335.00 each ($2680.00 for eight Nozzles); and that Castro Valley was "forced"

9    to purchase new Nozzles at a cost of $220.00 per Nozzle ($1760.00 for eight Nozzles).

10        Nevertheless, while it appears fairly clear that Castro Valley has not suffered any

11   physical damage to property, the court finds that the factual record is not sufficiently

12   developed to make a determination as to whether the "no economic loss" rule bars any of

13   Castro Valley's claims (although the court notes, that at most, the "no economic loss" rule

14   may bar the claim of negligent products liability, though not the claim of negligent

15   misrepresentation).

16        Finally, with regard to the fifth cause of action for breach of warranty, VST argues

17   that Castro Valley lacks standing because it never made a warranty claim, because its

18   Nozzles never failed during the warranty period, if ever, and because it is not in privity of

19   contract with VST.  Privity is a prerequisite for recovery under claims for breach of express

20   warranty, and under claim for breach of implied warranty.  See Burr v. Sherwin Williams

21   Co., 42 Cal. 2d 682, 695 (1954).  Castro Valley does not respond to this argument, apart

22   from a generalized assertion that it has standing (without reference to any particular cause

23   of action).

24        In his deposition, Mr. Moorjani effectively conceded that Castro Valley had never

25   made a warranty claim for any of the VST Nozzles it purchased, because he testified that

26   those Nozzles never had any problems, and that he was not aware of any circumstance

27   where VST refused to honor the one-year warranty.  He also testified that Castro Valley

28   never experienced a problem with any of its VST Nozzles during the 1-year express

7

United States District Court

For the Northern District of California

warranty period (which warranty was relayed to it by the installers of the VST system); and that the only written agreement it entered into was the agreement with the distributor, TITAN.

As with the argument regarding the "no economic loss rule," the court finds that the facts are insufficiently developed to enable a determination of whether Castro Valley lacks standing to assert the breach of warranty claims.

Based on the above analysis, the court finds that there are questions regarding whether Castro Valley is an adequate class representative, based on the issues raised by VST in its opposition to the motion. However, in view of the finding, below, that the class cannot be certified under any subsection of Rule 23(b), the court deems it unnecessary to definitively resolve this issue.

2.      Rule 23(b)

Castro Valley asserts that it is seeking certification under all three subsections of Rule 23(b). However, it does not address Rule 23(b)(2) at all. Moreover, the fact that the complaint seeks monetary relief that is not merely incidental to the injunctive/declaratory relief sought means that the class is inappropriate for certification under Rule 23(b)(2). See Dukes, 131 S.Ct. at 2557).

a.      Rule 23(b)(1)

Under Rule 23(b)(1), a class action may be maintained if

prosecuting separate actions by and against individual class members would create a risk of

(A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

(B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

Fed. R. Civ. P. 23(b)(1).

Castro Valley argues that the class can be certified under subsection of Rule 23(b)(1). Castro Valley asserts that because two of the main questions are whether the

8

United States District Court

For the Northern District of California

1   product (the Nozzles) was defective, and whether VST "negligently misrepresented its

2   Nozzle" or knew of or recklessly disregarded or concealed the defect, it is possible – if the

3   claims were taken up by different courts – for different triers of fact to "come up with

4   different remedies and thus different adjudications" which Castro Valley asserts could

5   deprive some class member of a remedy.

6       Castro Valley also claims that "multiple different judgments would create a risk of

7   imposing incompatible standards of conduct" and there would also be a risk that VST

8   "would be unable to act in response to both judgments."  For example, Castro Valley

9   argues, if one court were to grant its request for an injunction, and another court were to

10  deny the injunction, then VST would be in danger of violating one court order over another.

11  Castro Valley contends that the same analysis applies with regard to the "non-injunctive

12  claims."  In addition, Castro Valley asserts, if it were to prevail in this class action, then all

13  wronged members of the class would receive satisfaction, and if VST were to prevail, that

14  would preclude any further actions with regard to the attributes of the Nozzle.

15      VST responds briefly in its opposition, arguing that certification under Rule

16  23(b)(1)(A) is inappropriate when the action is primarily one for money damages, and that

17  certification under Rule 23(b)(1)(B) is inappropriate because that subsection applies only

18  where the plaintiff has established that the defendant may be liable for more money than it

19  has available.  Thus, VST asserts, certification under either subsection of Rule 23(b)(1) is

20  improper and the motion should be denied.

21      Certification under Rule 23(b)(1)(A) "is . . . not appropriate in an action for monetary

22  damages."  Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1193 (9th Cir. 2001).

23  Thus, to the extent that Castro Valley envisions seeking damages on behalf of the class, it

24  cannot be certified under Rule 23(b)(1)(A).

25      In contrast to Rule 23(b)(1)(A), which focuses on the rights of parties opposing the

26  class, Rule 23(b)(1)(B) focuses on the rights of unnamed class members.  See McDonnell

27  Douglas Corp. v. U.S. District Court, 523 F.2d 1083, 1086 (9th Cir. 1975).  Class actions

28  are permitted under Rule 23(b)(1)(B) "only if separate actions 'inescapably will alter the

United States District Court

For the Northern District of California

1   substance of the rights of others having similar claims.'" Id. (citing La Mar v. H & B Novelty

2   & Loan Co., 489 F.2d 461, 466-67 (9th Cir. 1973)).  A classic example of a Rule 23(b)(1)(B)

3   action is one which charges "a breach of trust by an indenture trustee or other fiduciary

4   similarly affecting the members of a large class of beneficiaries, requiring an accounting or

5   similar procedure to restore the subject of the trust." Ortiz v. Fibreboard Corp., 527 U.S.

6   815, 834 (1999).

7        Rule 23(b)(1)(B) is often applied in so-called "limited fund" cases, which are cases in

8   which the plaintiff has established that the defendant may be liable for more money than it

9   has available.  See, e.g., Ortiz, 527 U.S. at 838-39.  However, Rule 23(b)(1)(B) certification

10  is not limited to such cases.  See, e.g., McCluskey v. Trustees of Red Dot Corp. Employee

11  Stock Ownership Plan and Trust, 268 F.R.D. 670, 677-78  (W.D. Wash. 2010).  As an

12  example, Rule 23(b)(1)(B) is often used to certify classes in cases involving ERISA claims

13  that authorize Plan-wide relief, where failure to certify the class would leave future plaintiffs

14  without relief.  See id.  However, where putative class members have an individual remedy,

15  and could pursue relief on their own behalf, Rule 23(b)(1)(B) is not applicable.  In re First

16  Am. Corp. ERISA Litig., 258 F.R.D. 610, 622 (C.D. Cal. 2009).

17       Here, while the injunctive relief Castro Valley seeks would apply to the class – an

18  order prohibiting VST from continuing to advertise the Nozzles as defect-free, and an order

19  requiring VST to supply members of the class with compliant Nozzles that are free from

20  defect, and that have "hold-open" clips – it would not clearly impact the interests of others

21  having similar claims, and would not substantially impair or impede their ability to protect

22  their interests.  Moreover, the damages sought (while not fully spelled out in the complaint)

23  clearly are intended to provide relief to individual members of the class.  Accordingly, the

24  class cannot be certified under Rule 23(b)(1)(B).

25            b.    Rule 23(b)(3)

26       Under Rule 23(b)(3), a plaintiff must show that "the questions of law or fact common

27  to class members predominate over any questions affecting only individual members," and

28  must also demonstrate that a class action is superior to other methods available for

United States District Court

For the Northern District of California

1   adjudicating the controversy at issue.  Fed. R. Civ. Pro. 23(b)(3).  Castro Valley argues that

2   it meets both requirements under Rule 23(b)(3).

3                          i.        Predominance of common questions

4         The Rule 23(b)(3) predominance inquiry "tests whether proposed classes are

5   sufficiently cohesive to warrant adjudication by representation."  AmChem Prods., Inc., v.

6   Windsor, 521 U.S. 591, 623 (1997).  This inquiry is "far more demanding than Rule 23(a)'s

7   commonality requirement."  Id. at 623-24.  It requires the weighing of the common

8   questions in the case against the individualized questions, which differs from the Rule

9   23(a)(2) inquiry as to whether common questions are at issue in the case.  Under the

10  predominance inquiry, "there is clear justification for handling the dispute on a

11  representative rather than an individual basis" if "common questions present a significant

12  aspect of the case and they can be resolved for all members of the class in a single

13  adjudication . . . ."  Hanlon, 150 F.3d at 1022, quoted in Mazza, 666 F.3d at 589.

14        "'[C]onsidering whether questions of law or fact common to class members

15  predominate begins, of course, with the elements of the underlying causes of action.'"

16  Stearns v. Ticketmaster Corp., 655 F.3d 1013, 1020 (9th Cir. 2011) (quoting Erica P. John

17  Fund, Inc. v. Halliburton Co., __ U.S.__, 131 S.Ct. 2179, 2184 (2011)).  Here, Castro Valley

18  asserts that common questions predominate for all claims alleged in the complaint.

19        Castro Valley argues that it need only show that there are common questions that

20  are subject to generalized proof, and which are applicable to the class as a whole.  Castro

21  Valley argues that all the claims arise from the same practice or course of conduct and are

22  based on the theory that the negligent misrepresentation and unfair business practices

23  relate to all purchasers of the Nozzle; that the negligence claim arises from the fact that

24  VST released a defective product into the stream of commerce; and that the warranty claim

25  stems from the fact that the Nozzle is defective, and that VST failed to cover the

26  replacement under the warranty.  Thus, Castro Valley asserts, every claim of liability

27  applies to all members of the proposed class and to VST.

28        Castro Valley argues that any individualized question that may arise would be

United States District Court

For the Northern District of California

1    "minor, ancillary, and unimportant," and that if there are any individualized issues, the court

2    can certify subclasses, although it provides no indication as to what those individualized

3    issues might be or how any subclasses might be defined.   Castro Valley also contends that

4    it is not necessary that all class members have suffered the exact same injury, and that the

5    common questions include whether, as a result of VST's conduct, Castro Valley and the

6    class did suffer injury/damages, and if so, the appropriate amount thereof; whether Castro

7    Valley and the class are entitled to injunctive relief to remedy VST's misconduct; whether

8    VST has been unjustly enriched; and whether VST caused the class members' injuries by

9    placing defective Nozzles into the stream of commerce.

10         The court finds, however, that common questions do not predominate because the

11   underlying claims will require individualized proof and individualized legal analyses.  As a

12   general matter, questions that will require individualized resolution include whether, in view

13   of the fact that only 13 leaks were reported to the State, each VST Nozzle at each station

14   (a total of approximately 35,000 Nozzles) actually leaked; whether each station owner

15   actually replaced the VST Nozzles, and if so, whether that was because the State Fire

16   Marshal mandated removal of the "hold-open" clips, or because the Nozzles were old or

17   had been otherwise damaged; whether any particular station owner has already filed an

18   individual lawsuit, and if so, whether those stations or owners can be part of this lawsuit;

19   and whether any particular station owner has already signed a release with VST, agreeing

20   to allow VST to remove and/or replace the "hold-open" clips, and also agreed not to

21   participate in any lawsuit – class or individual.  In addition, each cause of action raises

22   individualized issues that cannot be resolved on a classwide basis.

23                                    UCL claims

24         California's Unfair Competition Law ("UCL") prohibits any business act or practice

25   that is unlawful, fraudulent, or unfair.  Cal. Bus. & Prof. Code § 17200; see also Korea

26   Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134, 1143 (2003).  In the second cause

27   of action under § 17200, Castro Valley alleges that VST engaged in "unfair and/or

28   fraudulent" business acts or practices by misrepresenting the "purported benefits and

United States District Court

For the Northern District of California

1   attributes, lawful compliance and the fitness for their intended purpose" of the VST Nozzles.

2   Cplt ¶¶ 76-77.  Thus, it appears that the UCL claim is based on the "unfair" and "fraudulent"

3   prongs of the statute, but not on the "unlawful" prong.

4        The term "unfair business act or practice" refers to "deceptive conduct that injures

5   consumers and competitors."  Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.,

6   20 Cal. 4th 163, 195-96 (1999).  In cases involving claims of anticompetitive practices

7   against competitors, an "unfair" act or practice is "conduct that threatens an incipient

8   violation of an antitrust law, or violates the policy or spirit of one of those laws because its

9   effects are comparable to or the same as a violation of the law, or otherwise significantly

10  threatens or harms competition."  Id. at 187.  In actions brought by consumers, an unfair

11  business practice under the UCL is one that "either offends an established public policy or

12  is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers."

13  McDonald v. Coldwell Banker, 543 F.3d 498, 506 (9th Cir. 2008).

14       For any UCL claim alleging fraudulent conduct, the complaint must allege the

15  underlying facts with "reasonable particularity" and must state the "who, what, when, and

16  where" of such conduct.  See Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir.

17  2003).  A plaintiff may demonstrate a violation of the "fraudulent" prong of § 17200 by

18  showing that reasonable "members of the public are likely to be deceived."  Sybersound

19  Records, Inc. v. IAV Corp., 517 F.3d 1137, 1151-52 (9th Cir. 2008); see also Bardin v.

20  DaimlerChrysler Corp., 136 Cal. App. 4th 1255, 1261 (2006).

21       The UCL also contains a false advertising provision, which provides that it is unlawful

22  for any company or employee thereof to make or disseminate any statement concerning real

23  or personal property or professional services, which is known, or which by the exercise of

24  reasonable care should be known, to be untrue or misleading.  Cal. Bus. & Prof. Code

25  § 17500.  As with the "fraudulent" practice prong of § 17200, a plaintiff seeking to establish a

26  claim of false advertising in violation of § 17500 must also establish that "members of the

27  public are likely to be deceived."  Committee on Children's Television, Inc. v. Gen. Foods

28  Corp., 35 Cal. 3d 197, 211 (1983), superceded by statute on another point as stated in

United States District Court

For the Northern District of California

1  Californians for Disability Rights v. Mervyn's, LLC, 39 Cal. 4th 223, 228 (2006); see also

2  Wayne v. Staples, Inc., 135 Cal. App. 4th 466, 484 (2006).  If the primary underlying wrong

3  that plaintiff is alleging is based on fraud, the allegations of fraudulent conduct alleged in

4  support of plaintiff's § 17500 claim must satisfy the heightened pleading requirements of

5  Rule 9(b).  See Vess, 317 F.3d at 1105.

6      In the first cause of action under § 17500, Castro Valley alleges that VST distributed

7  advertisements for the Nozzles, in which it falsely represented that the Nozzles "would

8  function properly, would be free from defects, would eliminate accidental fuel spillage, would

9  be reliable and only require standard maintenance, would be in compliance with California

10  law, and would operate properly with a standard hold-open clip."  Cplt ¶¶ 69-71.

11      With regard to the first and second causes of action under § 17500 and § 17200,

12  Castro Valley argues that common questions predominate over questions affecting only

13  individual members of the class.  Castro Valley asserts that the common questions include

14  whether VST has engaged in unfair methods of competition, unconscionable acts or

15  practices, and unfair and deceptive acts or practices in connection with the advertisement,

16  sale, or distribution of the Nozzle, or has violated the unfair business practices statutes of

17  the State of California.

18      Castro Valley argues that common questions also include whether the Nozzles

19  were/are defective; were falsely advertised as suitable for eliminating accidental fuel spillage

20  and reducing dripping and spitting, or as "cost efficient," or as "offer[ing] safer options, fewer

21  failures and lower maintenance costs," or "lower costs of ownership" or as having a "safe

22  and durable interlock design;" or were unfit for their intended use when introduced to the

23  market; and whether as a result of the false advertising, the violations of §§ 17500 and

24  17200, and the Nozzle's design and/or manufacturing defects, Castro Valley and the class

25  have been injured/damaged.  Castro Valley adds that in the event that not all the VST

26  Nozzles sold in California were "alike" or suffered from the same defects, the court can

27  resolve this problem "through subclasses if necessary."

28      The court finds, however, that common questions do not predominate, as the UCL

United States District Court

For the Northern District of California

claims will require an individualized inquiry into what specific representations regarding the Nozzles were made to particular station owners, and whether those representations were made by VST or by contractors or by distributors,[3] and whether the station owners relied on those representations in deciding to purchase the Nozzles – which inquiry Castro Valley's expert  Wolf H. Koch conceded would have to be made on a case-by-case basis.

While it is generally true that restitution under the UCL is available to absent class members without individualized proof of deception, reliance, or injury, see In re Tobacco II Cases, 46 Cal. 4th 298, 320 (2009), there can be no presumption of reliance where the evidence shows that many class members were never exposed to the alleged misleading advertisements or where there is no evidence that the allegedly false representations were made uniformly to all members of the proposed class, as California law does not allow a consumer who was never exposed to an alleged false or misleading advertising campaign to recover damages under the UCL.  See Mazza, 666 F.3d at 595-96 (citing Pfizer Inc. v. Superior Court, 182 Cal. App. 4th 622, 632 (2010)).

<div align="center">Claim of negligent misrepresentation</div>

The elements of a claim of negligent misrepresentation are an untrue representation as to a material fact, made by the defendant without a reasonable ground for believing it true, and with an intent to induce reliance, plus justifiable reliance by a plaintiff who does not know that the representation is false, and damage.  See Bear Stearns & Co. v. Daisy Sys. Corp., 97 F.3d 1171, 1180 (9th Cir. 1996).  The existence of a duty of care is necessary to support a negligent misrepresentation claim.  Alfus v. Pyramid Tech. Corp., 745 F.Supp. 1511, 1523 (N.D. Cal. 1990); see also Garcia v. Superior Court, 50 Cal. 3d 728 (1990).

In the third cause of action for negligent misrepresentation, Castro Valley alleges that VST "negligently misrepresented material facts upon which the [p]laintiff, and the class the

_____

[3] VST's president Glenn K. Walker states in his declaration that "VST does not typically interact with station owners directly regarding the purchase of the nozzles, but in some cases it may do so;" and that "VST does not have a policy of distributing the exact same written materials to any particular station owner, nor does VST know what each individual station owner might have read or received prior to making a decision to purchase the VST nozzles." Walker Decl. ¶ 11.

United States District Court

For the Northern District of California

1   [p]laintiff represents relied" – specifically, that "the VST Nozzles with the hold-open clip were

2   fit for their intended purpose, free from defects and were lawfully compliant" – and that VST

3   intended that plaintiff and the class rely on these representations, which were false, and that

4   plaintiff and the class were damaged thereby.  Cplt ¶¶ 81-87.

5           Castro Valley argues that common questions predominate over questions affecting

6   only individual members of the class, and identifies the common questions relating to the

7   claim of negligent misrepresentation as including whether VST concealed and failed to

8   disclose to the class "material facts in its communications and disclosures to [p]laintiffs and

9   the [c]lass members regarding the [d]efects, which are inherent in the . . . Nozzle[;]" whether

10  VST had a duty to inform its customers that it had been negligent in the design and/or

11  manufacture of the Nozzle; whether the failure to inform customers of the alleged negligent

12  design and/or manufacture in fact caused injury or damage; and whether it was foreseeable

13  that the failure to inform customers would cause injury or damage.

14          The court finds, however, that common issues do not predominate with regard to the

15  negligent misrepresentation claim, as it will require an individualized inquiry into, for

16  example, what verbal or written representations were made to the members of the class,

17  when those representations were made, and whether the class members relied on them.  In

18  California, negligent misrepresentation is a species of fraud.  Bily v. Arthur Young & Co., 3

19  Cal. 4th 370, 407 (1992).  To prevail in a fraud claim, a plaintiff must plead and prove the

20  "who, what, when, where, and how" with particularity.  See Vess, 317 F.3d at 1104-05.

21                                    Claim of negligence

22          The fourth cause of action for negligence alleges that VST was negligent in failing to

23  provide "lawfully compliant motor fuel dispensing nozzles, fit for their intended use and free

24  from defects with standard hold-open clips as part of its motor fuel dispensing system."  Cplt

25  ¶ 90.  This appears to be a products liability claim, asserted under a negligence theory.  As

26  with a defective product claim under a strict liability theory, a plaintiff asserting a negligent

27  products liability claim must show that a defect in the product caused the injury – and in

28  addition, must also show that the defect was due to the negligence of the defendant.  Merrill

16

1  v. Navegar, Inc., 26 Cal. 4th 465, 479 (2001).

2  Castro Valley asserts that common issues include whether the Nozzles were/are

3  defective; whether they were unfit for their intended use when introduced to the market; and

4  whether VST knew or recklessly disregarded the fact that the Nozzles were defective and

5  not fit for their intended purpose, and "failed to present timely remedies."

6  The court finds that common issues do not predominate with regard to the negligence

7  claim, as it will require an individualized inquiry into, for example, whether the Nozzles

8  purchased by individual class members actually leaked; how long each Nozzle was shelved

9  before being installed, and whether Nozzles that had been stored for a long time –

10  particularly in varying or extreme conditions – were more prone to leak; whether any of the

11  Nozzles was damaged, and if so, whether that damage contributed to the alleged leak (if, in

12  fact, the Nozzle did leak), or whether the damage was caused by other factors such as

13  customer abuse or accidental drive-offs.

14  The negligence claim will also require an individualized inquiry into whether each

15  station owner conducted the required inspections and/or maintenance of each gas Nozzle,

16  as required by California law, and if not, whether that failure to properly inspect and maintain

17  contributed to the harm being alleged; whether any physical damage resulted, or whether

18  damage consisted solely of "economic losses" – which, as explained above, are precluded

19  in a product liability claim under California's "no economic loss rule."

20  <center>Claim of breach of warranty</center>

21  In the fifth cause of action, Castro Valley asserts a claim of "breach of warranty –

22  express and implied."  A warranty is a contractual term concerning some aspect of the sale

23  of goods – such as title to the goods or their quality or quantity.  Windham at Carmel Mt.

24  Ranch Ass'n v. Superior Court, 109 Cal. App. 4th 1162, 1168 (2003).  A warranty may be

25  either express or implied.  Id.

26  To state a claim under California law for breach of express warranty, a plaintiff must

27  allege 1) the exact terms of the warranty; (2) reasonable reliance thereon; and (3) a breach

28  of warranty which proximately caused plaintiff's injury.  Williams v. Beechnut Nutrition Corp.,

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1   185 Cal. App. 3d 135, 142 (1986).  A plaintiff also must plead that he or she provided the

2   defendant with pre-suit notice of the breach.  Cal. Com. Code § 2607.

3         Here, the complaint does not detail the exact terms of any express warranty.  The

4   only reference to any terms of the warranty is the allegation that the one-year limit placed by

5   VST on its written warranty is "unconscionable, illegal, and unenforceable" because it

6   "overwhelmingly favors [VST] by unreasonably limiting the warranty" to one year on "a

7   product that is expected to last for years and years" and because a "gross disparity in

8   bargaining power existed between" Castro Valley and VST.  Cplt ¶ 100.  The complaint also

9   alleges, on information and belief, that Castro Valley and the members of the proposed

10  class "took reasonable steps to notify . . . VST within a reasonable time that its nozzles were

11  not as represented."  Cplt ¶ 107.

12        An implied warranty is based on implied representations rather than on promises, and

13  may be created by statute or case law.  Windham, 109 Cal. App. 4th at 1168.  In the

14  complaint, Castro Valley alleges that because the Nozzles are "defective at their inception,"

15  VST breached its warranty "each and every time it sold/distributed . . . a Nozzle in the State

16  of California."

17        Castro Valley contends that these breaches of warranty affected every member of the

18  class, and that the common questions include whether VST breached its warranties.

19  The general rule with regard to a claim of breach of either express or implied warranty is that

20  a plaintiff must stand in vertical contractual privity with the defendant.  Burr, 42 Cal. 2d at

21  695; see also Ehrlich v. BMW of North America LLC, 801 F.Supp. 2d 908, 921 (C.D. Cal.

22  2011).  A buyer and seller stand in privity if they are in adjoining links of the distribution

23  chain.  Osborne v. Subaru of Am., Inc., 198 Cal. App. 3d 646, 656 n.6 (1988).  Thus, an end

24  consumer who buys from a retailer is not in privity with the manufacturer.  Id.; see also Burr,

25  42 Cal. 2d at 695 (no privity between original seller and subsequent purchaser who was not

26  a party to the original sale).

27        However, there are several exceptions to the privity requirement.  Clemens v.

28  DaimlerChrysler Corp., 534 F.3d 1017, 1023 (9th Cir. 2008).  One exception is for a plaintiff

18

United States District Court
For the Northern District of California

1   who relied on written labels or advertisements distributed by the manufacturer, where

2   recovery from the manufacturer has been allowed on the theory of express warranty without

3   privity, based on a printed guarantee of quality. Id. at 695-96.  Here, for the reasons stated

4   above, determining whether any particular station owner relied on VST's advertisements will

5   require an individualized inquiry.

6       Another exception recognized by the courts is when a plaintiff pleads that he/she is a

7   third-party beneficiary to a contract that gives rise to the implied warranty of merchantability,

8   that plaintiff may assert a claim for breach of the implied warranty.  See In re Google Phone

9   Litig., 2012 WL 3155571 at 9 (N.D. Cal. Aug. 2, 2012) (citing In re Toyota Motor Corp., 754

10   F.Supp. 2d 1145, 1185 (C.D. Cal. 2005)).  Under the theory of third-party-beneficiary

11   liability, "[a] contract, made expressly for the benefit of a third person, may be enforced by

12   him at any time before the parties thereto rescind it."  Cal. Civ. Code § 1559; see Schauer v.

13   Mandarin Gems of Calif., Inc., 125 Cal. App. 4th 949, 957 (2005).   Here, however, while

14   Castro Valley claims to be a "third-party beneficiary," the complaint does not allege any

15   contract involving VST that would give rise to the implied warranty of merchantability, and

16   for which Castro Valley and the members of the class can be third-party beneficiaries.

17       Castro Valley claims that it paid "retail" price for the Nozzles, and suggests that it

18   purchased the Nozzles from a distributor, which had in turn purchased them from VST.  In

19   his declaration, Castro Valley's president Mr. Moorjani states that Castro Valley purchased

20   the VST system (including eight Nozzles) from "authorized VST distributor/contractor

21   TITAN-PME Equipment Sales."  However, in his deposition, he testified that TITAN had

22   approached him with an offer to sell the VST system at a cheaper price than another

23   distributor, but that he did not in fact know whether TITAN was an "authorized" distributor as

24   he had stated in his declaration.

25       Castro Valley has not shown that common questions predominate with regard to the

26   breach of warranty claim.  There is a likelihood that an individualized showing would need to

27   be made to establish privity or an exception to the privity rule – and even then, that an

28   individualized showing would need to be made as to whether the express warranty had

United States District Court

For the Northern District of California

1   expired with regard to each particular class member.  The general rule in California is that

2   an express warranty does not cover repairs made after the applicable time.  Clemens v.

3   DaimlerChrysler Corp., 534 F.3d 1017, 1023 (9th Cir. 2008).

4       In addition, an individualized inquiry will be required into whether each station's

5   Nozzles were still under the express 1-year warranty period as of the time the State

6   commenced its investigation and ordered the "hold-open" clips removed, and for those that

7   were still covered by the warranty, whether a warranty claim was made, and if so, whether it

8   was honored, and if not honored, why not.

9       The breach of warranty claims will also require an individualized inquiry into whether

10  VST contracted directly with any particular station,[4] or if not, which distributor provided the

11  Nozzles and whether individual station owners were in privity of contract with specific

12  distributors, given that there is no basis in complaint for determining where each purported

13  class member obtained its Nozzles;

14      In short, the breach of warranty claim is not suitable for class treatment because it

15  depends on the particular circumstances of individual class members – for example,

16  whether a particular Nozzle was still covered by the express warranty, and if so, whether the

17  station owner made a claim and whether (and why) it was denied; and also whether a

18  particular station owner was/is in privity with VST.  When the court must determine the

19  merits of an individual claim to determine who is a member of the class, then class

20  treatment is not appropriate.  Herrera v. LCS Fin. Servs. Corp., 274 F.R.D. 666, 672-73

21  (N.D. Cal. 2011).

22          ii.      Superiority of class action to other methods of adjudication

23      Castro Valley asserts only that because all claims are based on the alleged defects in

24  VST's Nozzle, and on VST's "behavior and business practices," which were uniformly

25  applied to the class, a class action would provide the superior method of adjudicating the

26  _____

27      [4] VST's president Glenn K. Walker states in his declaration that Castro Valley "does not
    have a direct contract with VST;" and that "VST typically distributes nozzles through a variety
28  of distributors who may have particular contracts with the individual station owners."  Walker
    Decl. ¶ 11.

United States District Court
For the Northern District of California

1    claims.

2          Matters pertinent to the Rule 23(b) inquiry include the class members' interests in

3    individually controlling the prosecution or defense of separate actions, the extent and nature

4    of any litigation concerning the controversy already begun by or against class members, the

5    desirability or undesirability of concentrating the litigation of the claims in the particular

6    forum, and the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)

7          While it is true that a class action is the superior method for managing litigation if no

8    realistic alternative exists, see Valentino v. Carter-Wallace, 97 F.3d 1227, 1234-34 (9th Cir.

9    1996), in this case, it appears that a number of putative class members have already filed

10   individual actions against VST, which demonstrates that realistic alternatives do exist.

11   Indeed, Mr. Moorjani states in his declaration that if this matter is not certified as a class

12   action, he intends to pursue the matter individually.  See Moorjani Decl. ¶ 14.

13   C.    Evidentiary Objections

14         Both Castro Valley and VST have submitted numerous evidentiary objections.  The

15   court has reviewed the objections, and finds that they must be OVERRULED for purposes of

16   this motion only.  Given the conclusion that the class cannot be certified under either Rule

17   23(b)(1), Rule 23(b)(2), or Rule 23(b)(3), and also given that the court has not relied on any

18   inadmissible evidence in reaching that conclusion, the court finds it unnecessary to issue a

19   detailed ruling on the parties' objections.

20                                          **CONCLUSION**

21         In accordance with the foregoing, the court DENIES the motion for class certification.

22   The court will conduct a case management conference on January 17, 2012, at 2:00 p.m.

23

24   **IT IS SO ORDERED.**

25   Dated: October 22, 2012

26                                          _____
                                           PHYLLIS J. HAMILTON
27                                          United States District Judge

28

21